IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD H. DEVINE, Jr. and
VICTORIA ANN DEVINE
        Plaintiffs                             : CIVIL ACTION

v.

AMERICA'S WHOLESALE LENDER,     : JURY TRIAL DEMANDED
COUNTRYWIDE HOME LOANS, INC.,
U.S. BANK, NATIONAL ASSOCIATION, and
PATRIOT MORTGAGE COMPANY
OF AMERICA, INC.
        Defendants                           : 07-CV-

## COMPLAINT

1. This is an action seeking damages, a declaration of rescission, and remedies for rescission under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. ("the TILA") and other applicable state and federal law against the original lenders, the current mortgage holders, and the broker in a predatory loan transaction.

2. Jurisdiction of this court to hear this proceeding is conferred by 15 U.S.C. § 1640(e).

3. The Plaintiffs are Edward H. Devine, Jr. and Victoria Ann Devine, married adult individuals residing at 846 Maplewood Rd., Wayne, PA 19087 ("the Home").

4. The Defendants are (1) America's Wholesale Lender ("AWL"), the fictitious name of organization the enity number of which is 2255548 and which lists the address of 3993 Huntington Pike, Suite 105, Huntington Valley, PA 19006, with the Pennsylvania Department of State, the original lender in the transaction at issue; (2) Countrywide Home Loans, Inc. ("Countrywide"), a Foreign Business Corporation the entity number of which is 794984 and which lists the address of C/O the Prentice-Hall Corporation System, Inc., 2704 Commerce Dr., Harrisburg, PA 17110, with the Pennsylvania Department of State, the entity which is listed as the fictitious owner of AWL with the Department of State; (3) U.S. Bank National Association, as trustee for Harbor View 2005-08 ("US Bank"), an entity which is not listed with the Pennsylvania Department of State but which lists the address of 7105 Corporate Dr., Plano, TX 75024, on the mortgage foreclosure Complaint filed against the Plaintiff's in the Court of Common Pleas of Delaware County, Pennsylvania, and purported to be "the legal owner of the mortgage [who] is in the process of formalizing an assignment of same;" and (4) Patriot Mortgage Company of America, Inc.("Patriot"), a Pennsylvania Business Corporation the entity number of which is 3055518 and which lists the address of 931 Huntington Pike, Huntington Valley, PA

1

19006, with the Pennsylvania Department of State, the broker in the transaction at issue.

5. The Plaintiffs entered into this transaction as they were seeking a mortgage refinancing which would reduce or maintain, but certainly not increase, their mortgage payment on a short-term basis while they attempted to sell the home.

6. The transaction at issue was arranged by Kenneth Gjurich of Patriot and Harry Schrieber of Countrywide. In the course of negotiations, Gjurich assured the Plaintiffs that they would receive a loan product with an option to pay approximately $3,500.00 per month, which was in the range of their previous mortgage loan.

7. However, when the settlement occurred in the Plaintiff's home, the settlement agent advised the Plaintiffs that their desired option was not included in the agreement as proposed. As such, the Plaintiffs immediately called Gjurich and were assured by him that the documents as presented were a mistake, and that he was told by Schrieber that the desired option would be added to the package and that the Plaintiffs could sign the documents on the assumption that the desired option would be added. However, this was not the case and no correction of this omission was ever made.

8. As a result, the Plaintiffs found themselves required to make payments of over $8,400.00 per month on this loan and moreover, subject to an additional loan from AWL which they never anticipated and which called for further monthly payments of approximately $2,300.00 per month.

9. Among the documents which the Plaintiffs received to memorialize this transaction were a Truth-in-Lending Disclosure Statement ("DS"), a Settlement Statement ("SS"), and Notices of Right to Cancel ("the Notices"), representing the larger of the two loans entered into by the Plaintiffs, copies of which are attached hereto as Exhibits "A," "B," and "C," respectively. However, while receiving a SS reflecting some of the terms of the smaller of the two loans, attached hereto as Exhibit "D," the Plaintiffs failed to receive a DS or any of the four required copies of the Notices representing the smaller of the two loans.

10. A significant aspect of this transaction is that it was split into two loans. The Plaintiffs expected to receive one loan secured by a mortgage and were not informed prior to settlement that the instant transaction would result in their receiving two loans. Since this was a single transaction which involved "loan splitting," the Plaintiffs were entitled to full TILA disclosures which described the entire loan package. However, these disclosures were also not provided.

11. Moreover, it appears that numerous charges imposed upon the Plaintiff's in connection with this transaction should have been included as part of the Finance Charge disclosed, but were not. Noteworthy are charges Patriot received which include not only a $6,182.50 charge paid by the Plaintiffs, but also a $750.00 appraisal fee and a "premium" paid to it by the lender of $36,968.75. Additionally, in regard to the smaller of the two loans, the

Plaintiffs were charged another $295.00 by Patriot who thereafter received another "HELOC Premium" of $4,011.88 seemingly paid by the lender. Also, an entity identified as "MAK Abstract, LLC" received numerous fees which come to $638.00, AWL itself received $550.00, and another $116.00 was charged Landsafe Flood and Countywide tax service. Moreover, without documentation regarding the smaller of the two loans, it is impossible to ascertain what charges were imposed in connection with that loan and whether there were duplicative charges therein. Regardless, when these and all other charges are analyzed, it is clear that charges properly characterized as part of the Finance Charge in this transaction have only been partially disclosed as such, if at all, which renders the disclosure of the Finance Charge and Annual Percentage Rate of the Finance Charge on the Truth-in-Lending Disclosure Statement which the Plaintiffs did receive erroneous, which are material violations of the TILA.

12. Furthermore, settlement for this transaction took place in the Plaintiffs' residence, and therefore they aver that this transaction occurred as the result of and in connection with solicitations at the Borrowers' residence. As a result, the Plaintiffs were entitled to receive door-to-door sale rescission disclosures pursuant to 73 P.S. § 201-7 of the UTPCPL. However, the Plaintiffs did not receive any such disclosures.

13. Additionally, the transaction at issue throughout was tainted by fraud as the Plaintiffs were mislead by the lender and broker in the transaction expecting to receive one loan secured by a mortgage with payment comparable to that which they had previously while they attempted to sell the Home. Thereafter, when they were able to realize that this was not the case, they were fraudulently induced into consummating the transaction through blatant misrepresentation.

14. On or about June 11, 2007, having undertaken to represent the Plaintiffs, the undersigned forwarded a letter to U.S. Bank and AWL indicating that the Plaintiffs were exercising their right to rescind the loan agreement pursuant to material violations of the TILA and fraud, a copy of which is attached hereto as Exhibit "E." Moreover, this letter constituted a qualified written request under the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(5)(e) ("RESPA"), requesting certain information relative to the underlying loan.

15. To date there has been no response to the Plaintiffs' rescission demand nor to their RESPA request.

## COUNT ONE

16. The allegations of paragraphs 1 through 15 are incorporated herein by reference.

17. The transaction described herein was a closed-end consumer financing transaction to

refinance the Plaintiffs' residential mortgage, which is within the scope of the TILA.

18. The misrepresentations in this transaction resulting in two separate loans secured by the Home and the misrepresentations regarding the features of the loans, the underdisclosed finance charges and all of their other aforementioned violations in connection with same constitute material violations of the TILA which entitle the Plaintiffs to rescind the above mentioned loan transactions pursuant to the TILA and common-law principles as they were fraudulently induced into consummating this transaction.

19. Moreover, The Plaintiff did not receive accurate disclosures of the terms of these transactions as required by the TILA, including, but not limited to, the actual "Finance Charge" in the transactions, in violation of 15 U.S.C. § 1638(a), as the Finance Charges as disclosed omit the many of the charges and excessive charges referenced in paragraph 11 supra which renders the disclosures of the Finance Charges and Annual Percentage Rates of the Finance Charges erroneous, which are also material violations of the TILA entitling the Plaintiffs to rescind the instant loan transactions.

20. Finally, the failure to provide the Plaintiffs with the requisite eight copies of the Notice in connection with the refinancing, the failure to provide disclosures reflecting the transaction as a whole notwithstanding the violative loan splitting, and the failure to provide the DS reflecting the imposition of the smaller loan, also constitute a material violations the TILA entitling the Plaintiffs to rescind the transaction at issue.

WHEREFORE, the Plaintiffs requests that whomever the holder of the mortgages is be ordered to satisfy the security interest in the Home, desist form making any claim for finance charges arising out of this transaction, and that the Defendants return all of the Plaintiffs' payments and be barred from making any claim for payments against the Plaintiffs, and that the entities holding the mortgages at any time be deemed liable jointly and severally to the Plaintiffs for statutory damages of $2000 and the undersigned's reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1635(b), 1640(a)(2)(A)(i), and 1640(a)(3) of the TILA.

## COUNT TWO

21. All of the allegations of paragraphs 1 through 20 are incorporated herein by reference.

22. The instant transaction, in which the closing took place at the Plaintiffs' residence, was a transaction where services were sold to the Borrowers as a result of and in connection with

a contact with consumers at their residence in person, and hence is within the scope of 73 P.S. § 201-7(a) of the UTPCPL. See In re Smith, 866 F.2d 576, 581 (3d Cir. 1989).

23. However, the Borrowers did not receive a statement permitting them to cancel or rescind this transaction which was in conformity with 73 P.S. § 201-7(b) in connection with this transaction, or which was completed as required in 73 P.S. § 201-7(c), nor were they given the information regarding this right orally, as required in 73 P.S. § 201-7(d).

24. As such, the cancellation period for this transaction under this law never began to run, as the Borrowers were never informed of this right to cancel, nor did they receive the requisite cancellation notice. 73 P.S. § 201-7(e).

25. The loan holder was obliged, no later than 20 days after the receipt of the letter of June 11, 2007, to honor this notice of cancellation of this transaction by refunding all payments made, advising whether it wishes to repossess the funds given, and canceling the mortgage taken as security in the transaction. 73 P.S. § 201-7(g).

26. Due to the failure to respond within the 20-day period, the loan holder has forfeited any right to the proceeds of the loan. 73 P.S. § 201-7(i).

27. Moreover, the loan holder is also liable to the Plaintiffs for up to three times their actual damages arising from the violations of these statutory provisions or at least $100, plus reasonable attorneys' fees under 73 P.S. § 201-9.2(a).

WHEREFORE, the Plaintiffs request that the loan holder be ordered to satisfy its security interests in the Home and return all of the Borrowers' payments, and that they be ordered barred from making any claim for payment against the Plaintiffs, and be deemed liable to the Plaintiffs for damages of not less than $100, plus be directed to pay the undersigned reasonable attorneys' fees and costs pursuant to 73 P.S. §§ 201-7 and 201-9.2(a) of the UTPCPL.

### COUNT THREE
### (US BANK AND AWL)

28. All of the allegations of paragraphs 1-27 are incorporated herein by reference.

29. US Bank and AWL were not only obliged to respond to the Plaintiffs qualified written request concerning the instant transaction, specifically having failed to respond with an acknowledgement of receipt of the request within 20 days of said request, but also should not have provided information regarding any overdue payment owed by the Plaintiffs and relating to such qualified written request, to any consumer reporting agency. The failure of the aforementioned entities to comply with 12 U.S.C. §§ 2605(e) and (f) of the federal Real Estate Settlement Practices Act ("RESPA"), renders them liable for damages and costs pursuant to 12 U.S.C. §§ 2605(f)(1) and (f)(3).

WHEREFORE, the Plaintiffs requests that these Defendants be determined to be liable to the Plaintiffs, jointly and severally, for their actual damages incurred due to the Defendants' noncompliance, statutory damages of $1,000.00, reasonable attorneys' fees for the Plaintiff's counsel, and any costs pursuant to 12 U.S.C. §§ 2605(f)(1) and (f)(3).

## COUNT FOUR
### (AWL, Countrywide and Patriot)

30. All of the allegations of paragraphs 1 through 29 are incorporated herein by reference.

31. By failing to provide the requisite disclosures to the Plaintiffs, including but not limited to failing to disclose all of the funds that each entity was receiving in this transaction, failing to provide the mortgage product which was promised to the Plaintiffs and which they expected to receive until and through the time of closing, misleading them through blatant misrepresentation at that time, and failing to disclose the fact that the Plaintiffs were receiving two separate loans in separate transactions, the Defendants have engaged in common-law fraud, and have thereby violated the Pennsylvania Credit Services Act, 73 Pa.C.S. § 2183(3), (4), 2184, 2185, and 2186 ("the CSA") rendering them liable for the statutory damages provided in 73 P.S. § 2191; and Patriot has violated the Pennsylvania Loan Broker Trade Practices Regulations ("the LBTP"), 37 PA. CODE §§ 305.3(a)(1) through (a)(4).

32. The Defendants' violations of the CSA and the LBTP are per se violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 202-1, et seq. ("the UTPCPL"), rendering the Defendants liable for treble the damages payable under the CSA.

33. Moreover, AWL and Countrywide's aforementioned conduct was in and of itself violative of the UTPCPL as it constituted affirmative fraud and therefore, renders those entities

liable for actual and punitive damages pursuant to same.

WHEREFORE, the Plaintiff requests that Patriot be deemed liable to them for statutory damages in three times the amount of all fees collected by it in connection with this transaction, as well as reasonable attorney's fees for the Plaintiffs' counsel, and any costs pursuant to 73 P.S. § 2191 of the CSA and 73 P.S. section 201-9.2(a) of the UTPCPL, and that all of the aforementioned Defendants be found liable, jointly and severally, for actual and punitive damages for their affirmative fraud in connection with this transaction pursuant to the UTPCPL and common-law principles.

DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA. 19073
(610)-353-7543
Attorney for Plaintiffs