```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD H. DEVINE, JR., et al.   :    CIVIL ACTION
                                :
          v.                    :
                                :
AMERICA'S WHOLESALE             :
LENDER, et al.                  :    NO. 07-3272
```

MEMORANDUM

Bartle, C.J.                                        September 25, 2008

Plaintiffs, Edward H. Devine, Jr. and his wife Victoria Ann Devine, bring this action against defendants, America's Wholesale Lender ("AWL"), Countrywide Home Loans, Inc. ("Countrywide"), U.S. Bank, N.A. ("U.S. Bank"), and Patriot Mortgage Company of America, Inc. ("Patriot").[1] Plaintiffs allege violations of federal and state consumer lending laws in connection with the June 10, 2005 refinancing of two mortgages totaling approximately $2.5 million on their home in Wayne, Pennsylvania. More specifically, plaintiffs assert: a claim in Count I of the complaint under the Federal Truth in Lending Act, 15 U.S.C. § 1601, et seq.; claims in Counts II and IV under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. ANN. § 201-1, et seq.; a claim in Count III under the Real Estate Settlement Practices Act, 12

---

1. On January 21, 2008, a default was entered against Patriot for its failure to appear, plead or otherwise defend itself in this action.

U.S.C. § 2601, et seq.; and a claim in Count IV under Pennsylvania's Credit Services Act, 73 Pa. Cons. Stat. Ann. § 2181, et seq.  Now pending before the court are:  (1) the motion of defendants AWL, Countrywide and U.S. Bank for summary judgment; and (2) the cross-motion of plaintiffs for partial summary judgment with respect to their right to rescind the loan and for alleged violations of § 201-7 of the UTPCPL as set forth in Count II of the complaint.

## I.

Pursuant to Rule 56(c) Federal Rules of Civil Procedure, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is material when it "might affect the outcome of the suit under the governing law."  Id.  After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

## II.

The following facts are either undisputed or viewed in the light most favorable to the non-movant.  The plaintiffs

sought to refinance the two mortgages on their home in Wayne, Pennsylvania into one mortgage with lower monthly payments. The principal amount of the mortgage they sought was between $2.4 and $2.5 million. Refinancing also offered the possibility of obtaining cash from the lender. The plaintiffs discussed their desired loan terms with Kenneth Gjurich, a family friend and a loan broker employed by Patriot. The plaintiffs had previously worked with Mr. Gjurich in connection with the initial financing of their home. They discussed with Mr. Gjurich the subject of obtaining a loan that would allow them to make interest-only payments for at least one year in the amount of $3,500 a month.

Countrywide rejected the initial loan application submitted on behalf of the plaintiffs by Mr. Gjurich. However, it made a counteroffer for two loans at a higher interest rate and for lower principal amounts. At his deposition, Mr. Gjurich testified that he communicated the terms of the counteroffer to the plaintiffs, including Countrywide's rejection of plaintiffs' request for a single loan.[2] The plaintiffs agreed to move forward with the loans on Countrywide's terms but "held out hope" that Countrywide would alter the terms. The loan approval process continued until the day of settlement, and the amount of the loans changed numerous times prior to settlement.

---

2. Notably, Mr. Devine testified at his deposition that Mr. Gjurich informed him that Countrywide's counteroffer structured the transaction as two loans. Mr. Devine further testified that he knew that Countrywide did not agree to provide them one loan, and Mr. Gjurich never informed him that he was successful in negotiating a transaction consisting of one loan.

On June 10, 2005, Michael Kuldiner, a title agent with MAK Abstract, LLC, conducted the loan closing at the plaintiffs' home.  The loan terms, as set forth in the loan documents presented to them at the closing by Mr. Kuldiner, prompted them to call Mr. Gjurich.  Plaintiff Edward Devine informed Mr. Gjurich over the telephone that the loan documents did not provide the payment options he and his wife sought.  The Amortization Schedule for the first loan reflects a monthly mortgage payment exceeding $8,400.  Mr. Gjurich then telephoned Countrywide and reported back to the plaintiffs that the desired payment option would be added to the package after the first month's payment.

As a result of these assurances, the plaintiffs executed the loan documents.  Both signed, and Mr. Devine, in addition, initialed every page of the first mortgage for $2,275,000, which is designated Loan Number 101590973.  They also signed and Mr. Devine initialed every page of the second mortgage for $320,950, which is designated Loan Number 107978302.

The plaintiffs also signed and dated a Notice of Right to Cancel for both loans.  The Notice for each loan states that the "undersigned each acknowledge receipt of two completely filled in copies of the above Notice of Right to Cancel." According to plaintiffs, Mr. Kuldiner left a package of papers with them at closing and this package contained "only two Notice of Right to Cancel forms," rather than the extra copies for each

loan which they agreed that they had received when they signed the Notice of Right to Cancel forms.

Upon receiving Countrywide's first notice of payment due in the amount of $8,408.84, Mr. Devine contacted Countrywide. Countrywide informed Mr. Devine that the first payment should be for $8,408.84 but that he would have the option of paying approximately $3,500 in September, 2005.  In fact, the plaintiffs were never given the option of paying only $3,500 monthly.

### III.

The defendants move for summary judgment with respect to plaintiffs' claims in Count I of the complaint alleging the defendants impermissibly split the transaction into two loans in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.  A claim for "loan splitting" was the focus in Kane v. Equity One, Inc., No. 03-3931, 2003 WL 22939377 (E.D. Pa. Nov. 21, 2003).  After consulting cases from sister jurisdictions that addressed the issue, the court in Kane described loan splitting as "a situation where the debtor wants, requests and expects to get a single loan consummated in a single transaction, but the lender instead documents and makes disclosures for the loan as if it were two separate transactions."  Id. at *2.  Loan splitting contravenes TILA's mandate requiring lenders to provide a single, comprehensible disclosure of the cost of credit.[3]

---

3.  Title 15 U.S.C. § 1604(a) delegates authority in the Federal Reserve Board to promulgate regulations necessary to render the subchapter effective.  The Federal Reserve Board's Regulation Z,
(continued...)

However, a lender may structure the transaction as two separate loans provided the borrower's expectations are not frustrated. Id.; see also Stokes v. World Savings Bank, No. 00-7020, 2001 WL 1002461 (N.D. Ill. Aug. 31, 2001).

The defendants argue the evidence fails to show that the plaintiffs were ever led to believe they would receive a single loan.  In support, they rely on the deposition testimony of Mr. Gjurich and Mr. Devine, as well as the executed loan documents for the two loans.  In response, the plaintiffs highlight their initial intention that they receive a single loan.  They further contend that the exact terms of the loan transaction were not finalized until settlement.

Although the plaintiffs may have initially requested a single loan, all of the evidence demonstrates that the plaintiffs never expected to receive a single loan.  Mr. Gjurich testified that he informed the plaintiffs that Countrywide rejected their application for a single loan but made a counteroffer consisting of two loans.  According to Mr. Devine, Mr. Gjurich never told him that Countrywide had approved the plaintiffs' request for a single loan.  Thus, the parties do not dispute that:  (1) the plaintiffs were never led to believe that their request for a

---

3.(...continued)
set forth in 12 C.F.R. § 226.17, provides that the "creditor shall make the disclosures required by this subchapter clearly and conspicuously in writing, in a form that the consumer may keep."  12 C.F.R. § 226.17(a)(1).  This regulation is violated where two separate disclosure statements are provided for a single loan.

single loan had been approved; and (2) the plaintiffs were never informed that Countrywide had approved their request for a single loan.  Notably, the affidavit of plaintiff Edward Devine submitted in response to the defendants' motion for summary judgment never states that he expected the transaction to be structured as one loan.  The evidence simply does not support a finding that the plaintiffs expected or were led to expect they would receive a single loan from Countrywide.

Accordingly, the court will grant summary judgment in favor of the defendants on plaintiffs' claims in Count I under the TILA insofar as these claims are based on the loan splitting allegations.

IV.

The defendants move for summary judgment with respect to plaintiffs' claims in Count I of the complaint for statutory damages under the TILA not connected with their claims for rescission.  Plaintiffs' response indicates that their request for damages under the TILA stem exclusively from the plaintiffs' demand for a rescission of the loan.  Plaintiffs state in their brief:

> THE PLAINTIFFS' RESCISSION OF THE LOAN WITHIN
> THREE YEARS FROM THE DATE OF THE TRANSACTION
> AT ISSUE WAS TIMELY, AS IS THIS ACTION TO
> ENFORCE THE DEFENDANTS' WRONGFUL REFUSAL TO
> ADHERE TO THE PLAINTIFFS' RESCISSION DEMAND.

To the extent plaintiffs seek damages under the TILA for violations that allegedly occurred beyond rescission, the one year statute of limitations has run on these claims.  15 U.S.C.

§ 1640(e). The loan closing occurred on June 10, 2005. The plaintiffs' complaint was filed well over two years later, on August 9, 2007.

We will grant defendants' motion for summary judgment under the TILA for statutory damages not connected with their claim for rescission.[4]

V.

Defendants, AWL and U.S. Bank, move for summary judgment with respect to Count III of the complaint in which plaintiffs seek damages under the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601, et seq. In their response to defendants' motion for summary judgment, plaintiffs advise that they will not pursue this claim because the defendants have responded to their "qualified written request." They advise the motion to dismiss Count III is unopposed. We have reviewed the record and will grant summary judgment in favor of the defendants on Count III.

VI.

AWL and U.S. Bank move for summary judgment with respect to Count IV of the complaint, which asserts violations of

---

4. Plaintiffs have not indicated an intention to raise any claims via recoupment or set-off. Title 15 U.S.C. § 1640(e) provides: "This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by state law." Thus, a debtor may raise a TILA violation defensively as an objection to the proof of claim of a creditor. In re Norris, 138 B.R. 467, 470 (E.D. Pa. 1992).

§§ 2183(3), 2183(4), 2184, 2185 and 2186 of Pennsylvania's Credit Services Act ("CSA"), 73 PA. CONS. STAT. ANN. §§ 2181, et seq. These sections of the CSA only apply to "credit services organizations." Defendants contend they do not fall within the definition of a "credit services organization." Plaintiffs do not respond to this contention.

The plaintiffs have the burden of proving at trial that AWL and U.S. Bank constitute "credit services organizations," as that term is defined by § 2182 of the CSA.[5] The plaintiffs have

---

5. Section 2182 of the CSA defines a "Credit services organization" as follows:

> (1) A person who, with respect to the extension of credit by others, sells, provides or performs or represents that he or she can or will sell, provide or perform any of the following services in return for the payment of money or other valuable consideration:
>
>> (i) Improving a buyer's credit record, history or rating.
>>
>> (ii) Obtaining an extension of credit for a buyer.
>>
>> (iii) Providing advice or assistance to a buyer with regard to either subparagraph (i) or (ii).
>
> (2) The term shall not include any of the following:
>
>> (i) Any person organized, chartered or holding a license or authorization certificate to make loans or extensions of credit pursuant to the laws of the Commonwealth or the United States who is subject to regulation and supervision by
>>                                                           (continued...)

failed to produce any evidence that AWL or U.S. Bank fits within the definition of "credit services organizations."

Consequently, summary judgment will be granted in favor of AWL and U.S. Bank with respect to plaintiffs' claims under the CSA in Count IV.

### VII.

AWL and Countrywide move for summary judgment with respect to plaintiffs' claims in Count IV of the complaint arising under the catch-all provision of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. ANN. § 201-2(4)(xxi). Under § 201-2(4)(xxi), "unfair methods of competition" and "unfair or deceptive acts or practices" include any "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73

---

5.(...continued)
        an official or agency of the Commonwealth or the United States.

   (ii) Any bank, bank and trust company, trust company, savings bank, Federal savings and loan association or savings bank located in this Commonwealth or savings association or any subsidiary or affiliate of such institution whose deposits are eligible for insurance by the Federal Deposit Insurance Corporation, the Savings Association Insurance Fund of the Federal Deposit Insurance Corporation or the Pennsylvania Savings Association Insurance Corporation.

73 PA. CONS. STAT. ANN. § 2182.

PA. CONS. STAT. ANN. § 201-2(4)(xxi).  Count IV alleges AWL and Countrywide failed to disclose the distribution of the loan proceeds, failed to provide the mortgage product promised, failed to disclose that the transaction would be structured as two loans and generally misled the plaintiffs regarding many aspects of the loan.  Plaintiffs assert such conduct constitutes fraud rendering AWL and Countrywide liable under the UTPCPL's catch-all provision.

AWL and Countrywide contend the parol evidence rule bars the introduction of evidence of their alleged misrepresentations in connection with the transaction because the alleged misrepresentations contradict the terms of the loan documents.  Defendants further argue plaintiffs cannot prove they justifiably relied on the defendants' misrepresentations when entering into the loan.  Such reliance is a necessary element of a private cause of action under the UTPCPL.  Hunt v. U.S. Tobacco Co., No. 07-2134, 2008 U.S. App. LEXIS 16547, *8-9 (3d Cir. Aug. 5, 2008).  Plaintiffs do not respond to the defendants' arguments based on the parol evidence rule.

Under Pennsylvania law, evidence of prior or contemporaneous oral or written negotiations or agreements is generally inadmissible to explain or vary the terms of a contract that covers or purports to cover the entire agreement of the parties.  Yocca v. The Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004); Bardwell v. Willis Co., Inc., 100 A.2d 102, 104 (Pa. 1953).  In Yocca, the Pennsylvania Supreme Court

explained the fraud exception to the parol evidence rule as follows:

> Notably, while parol evidence may be introduced based on a party's claim that there was fraud in the execution of the contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract.

<u>Yocca</u>, 854 A.2d at fn. 26; <u>see also</u> <u>HCB Contractors v. Liberty Place Hotel Assocs.</u>, 652 A.2d 1278, 1279 (Pa. 1995).

The plaintiffs claim they signed the loan documents based on Mr. Gjurich's assurances that the payment option they desired would be added to the package after execution of the documents. This is fraud in the inducement. The parol evidence rule bars the introduction of this evidence because plaintiffs seek to vary the terms of the written loan documents, which purported to cover the parties' entire agreement. There is no evidence that a term was fraudulently omitted from the contract. Thus, what happened here does not fall within the fraud exception under <u>Yocca</u>.

Given Pennsylvania's adoption of the parol evidence rule, the plaintiffs cannot be said to have justifiably relied on the defendants' representations regarding the amount of the monthly payments due under the loans because these representations are in direct conflict with the parties'

contract. Yocca, 854 A.2d at 502. Thus, plaintiffs' claim under the UTPCPL fails.

Accordingly, the court will grant summary judgment in favor of AWL and Countrywide on plaintiffs' claims in Count IV under the catch-all provision of the UTPCPL which are based on defendants' alleged misrepresentations.[6]

## VII.

The court finds there are genuine issues of material fact with respect to plaintiffs' remaining claims. Thus, we will otherwise deny defendants' motion for summary judgment, as well as plaintiffs' motion for partial summary judgment.

---

6. The plaintiffs' brief in opposition to the defendants' motion for summary judgment for the first time asserts that their claims "against the Lender Defendants are based in part on the ground that a violation of any portion of the UTPCPL, notably here the violations of 73 P.S. section 201-7 and the violation of any other consumer protection laws, such as the TILA, constitute per se violations of section 201-4(2) of the UTPCPL." However, paragraph 32 of the plaintiffs' complaint premises their per se violations of the UTPCPL on the defendants' alleged violations of the CSA and the Loan Broker Trade Practices Regulations ("LBTP") only. To the extent the plaintiffs have premised their claims under the UTPCPL on the alleged violations of TILA and § 201-7 of the UTPCPL, such claims come too late.

```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD H. DEVINE, JR., et al.    :       CIVIL ACTION
                                 :
          v.                     :
                                 :
AMERICA'S WHOLESALE              :
LENDER, et al.                   :       NO. 07-3272
```

                              ORDER

          AND NOW, this 25th day of September, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

        (1)  the motion of defendants America's Wholesale Lender, Countrywide Home Loans, Inc., and U.S. Bank, N.A. for summary judgment is GRANTED in part and DENIED in part;

        (2)  judgment is entered in favor of America's Wholesale Lender, Countrywide Home Loans, Inc., and U.S. Bank, N.A. and against the plaintiffs with respect to plaintiffs' loan-splitting claims in Count I of the complaint;

        (3)  judgment is entered in favor of America's Wholesale Lender and U.S. Bank, N.A. and against the plaintiffs with respect to plaintiffs' claims in Count III of the complaint under the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et seq.;

        (4)  judgment is entered in favor of America's Wholesale Lender and Countrywide Home Loans, Inc. and against the plaintiffs with respect to plaintiffs' claims in Count IV of the

complaint under Pennsylvania's Credit Services Act, 73 Pa. Cons. Stat. Ann. §§ 2181, et seq.;

      (5)  judgment is entered in favor of America's Wholesale Lender and Countrywide Home Loans, Inc. and against the plaintiffs with respect to plaintiffs' claims in Count IV of the complaint under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi), which are based on allegations of fraud;

      (6)  defendants' motion for summary judgment is DENIED in all other respects; and

      (7)  plaintiffs' motion for partial summary judgment is DENIED.

                                            BY THE COURT:

                                            /s/ Harvey Bartl III
                                                                C.J.